**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**
No. 98-20894
Summary Calendar

LAVERNE SCALES,

Plaintiff-Appellant,

versus

RODNEY E. SLATER, Secretary of Transportation,

Defendant-Appellee.

Appeal from United States District Court
for the Southern District of Texas

August 3, 1999

Before POLITZ, BARKSDALE and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge.

We must determine whether the district court properly granted summary judgment to Defendant-Appellee Rodney E. Slater[1] as the official in charge of the Federal Aviation Administration ("FAA") in this employment discrimination lawsuit.[2]  After reviewing the evidence in the record, we believe that summary judgment was appropriate in this case because the discrimination claim fails as a matter of law.  We thus affirm the judgment of the district court.

**I**

Plaintiff-Appellant Laverne Scales ("Scales"), an African-American woman, filed suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c) (1994).[3]  She claims that the

---

[1] Pursuant to FED. R. APP. P. 43(c)(2), Slater, as successor to Federico Peña (the original Defendant in this lawsuit), was automatically substituted as a party in this official-capacity action.

[2] For simplicity, we will hereinafter refer to the Defendant as the "FAA."

[3] Although her claim is putatively both for race and gender discrimination, she never truly

FAA discriminated against her in March 1995 when Henry Lewis ("Lewis"), an African-American official at the Airway Facilities Division, elected not to promote her from the position of staff engineer to that of Assistant Manager of the Gulf Coast Systems Management Office ("GCSMO"), a GS-15 supervisory position within the FAA. Scales claims that, although she qualified for the position pursuant to a standardized ranking system within the FAA, Lewis implemented further criteria that eliminated her from the application process; a white male was instead promoted to the position. According to Scales, the use of these additional criteria was discriminatory in nature and constituted a violation of Title VII.

Scales, who possesses a Bachelor's of Science in Engineering, had worked for the FAA since August 1984. Until 1991, she was employed at FAA headquarters in Washington, D.C., where she progressed from the GS-9 level to GS-14. At that time, she accepted a demotion to GS-13 in order to transfer to Houston for personal reasons. Once in Houston, Scales attempted on several occasions both to obtain "detail" work (a discretionary method of gaining experience in a particular department) and promotions, principally to the Program Support department. Each time, Scales was denied the promotion or the detail work. After one such denial, Sector Manager Vernon Drake ("Drake") allegedly told Scales that she needed to find a "black mentor" who could assist her in obtaining a promotion.

In December 1994, the FAA published a nationwide announcement of new positions, including the GCSMO position for which Scales applied. In a departure from ordinary procedure, the FAA did not require a pre-qualification of candidates, and, as a result, it received a higher-than-usual number of applicants. Pursuant to FAA policy, these applicants were screened and those deemed "highly qualified" were then ranked on a promotion list for the advertised job. An applicant's qualification was rated by reference to core competencies—"knowledge, skills, and abilities"—before he or she was ranked. Scales was one of thirty-one candidates ranked as highly-qualified on the

_____

articulates the distinctions and similarities between the two claims. She appears to state a better claim for gender discrimination, but we treat her arguments *infra* as encompassing both where appropriate.

2

promotion list for the GCSMO position; all of them were referred to the Southwest Region office of the FAA for further consideration.

The Southwest Region office developed "key selection factors" in addition to those listed on the job announcement and those considered by the initial screening officials to identify which candidates to interview. As the selecting official and the primary architect of the interview plan, Lewis then used these factors, which were requirements of (1) managerial experience as a second-level supervisor in a General National Airspace Systems ("GNAS") organization and (2) regional office experience in Airway Facilities, to narrow the field of candidates. Nine of the candidates met these additional criteria and were interviewed for the position. Scales was not among them. These nine candidates were then re-ranked and re-rated and one was eventually selected for the GCSMO position. Scales concedes that no one involved in the selection or the screening of the "key selection factors" ever made a remark that she considered derogatory toward women, minorities in general, or African-Americans in particular.

Scales filed this suit, alleging race and gender-based discrimination, in May 1997. She argued, *inter alia*, that the FAA intentionally discriminated[4] against her by promoting another candidate to the GCSMO position, a conclusion she infers from alleged rules violations during the selection process and from alleged comments about minorities by officials in the Houston office. During the summer of 1998, the parties battled over summary judgment, and, on August 28, 1998, the district court ruled in favor of the FAA. The court below determined that Scales had not met her prima facie burden of proof under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Scales v. Peña, No. H-97-CV-1759, slip op. at 4-5 (S.D. Tex. Aug. 28, 1998). Even assuming that she had established the prima facie case, the court ruled that she had not adduced summary judgment evidence supporting the conclusion that the FAA's stated reasons for narrowing the applicant pool were pretextual. See id. at 5. The court found that the allegedly discriminatory comments made by

---

[4] We style her claim as one of "intentional discrimination" because Scales does so herself in her brief to this court. As we will explain below, the claim is more specifically one for "disparate treatment."

individuals within the FAA were essentially stray remarks, and not evidence of pretext. See id. at 5-6. Scales timely appealed this entry of judgment.

## II

## A

We exercise *de novo* review of a district court's granting of summary judgment. See Reliance Nat. Ins. Co. v. Estate of Tomlinson, 171 F.3d 1033, 1035 (5th Cir. 1999). A court appropriately enters summary judgment in favor of the moving party if the record, taken as a whole, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (holding that the moving party must demonstrate that there is no genuine issue of material fact as to any element of the claim). A factual dispute is "genuine" where a reasonable jury could return a verdict for the nonmoving party. See Alton v. Texas A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (holding that a material fact is one that might affect the outcome of the case under the governing law). If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597 (1986). After consulting applicable law in order to ascertain the material factual issues, we will consider the evidence bearing on those issues, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. See Hood v. Sears Roebuck & Co., 168 F.3d 231, 232 (5th Cir. 1999).

## B

Scales argues that the two additional criteria employed by Lewis to narrow the field of candidates for the GCSMO position effected disparate treatment of her due to her status as an African-American female.[5]   A plaintiff alleging employment discrimination need not come forward

---

[5] In the court below, Scales passingly raised a disparate impact claim, namely that there was a "significant statistical probability that African American females could not satisfy the two additional factors." Scales, however, neither contested below the FAA's arguments for dismissal of her

4

with direct evidence of discriminatory intent in order to avoid judgment as a matter of law. See Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir.1996) (en banc). Direct evidence[6] of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence. See LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 449 (5th Cir. 1996). When an individual infers discrimination from an employer's failure to promote her, we apply a modified version of the burden-shifting analysis articulated by the Supreme Court in McDonnell Douglas. Following that seminal case, a Title VII plaintiff alleging a discriminatory hiring practice bears the burden of proving a prima facie case that the defendant made an employment decision that was motivated by a protected factor. See 411 U.S. at 802; Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1089 (5th Cir. 1995). A failure-to-promote case applies the same criteria in that a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she sought and was qualified for an available employment position; (3) she was rejected for that position; and (4) the employer continued to seek applicants with the plaintiff's qualifications. See id.; Grimes v. Texas Dep't of Mental Health and Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996).

---

disparate impact claim nor suggested that her statistical evidence demonstrated pretext; she thus abandoned the claim. Although we find her limited attempt to revive that claim in her opening brief likewise insufficient, and we believe that she has waived any right to have her disparate impact theory of liability considered on appeal, see DSC Communications Corp. v. Next Level Communications, 107 F.3d 322, 326 n.2 (5th Cir. 1997) ("[A] party who fails to raise an issue in its initial brief waives the right to review of that issue."), in an abundance of caution we will address it briefly here.

While it is true that gross statistical disparities may be probative of discriminatory intent, motive, or purpose, see Walthier v. Lone Star Gas Co., 977 F.2d 161, 162 (5th Cir. 1992) (per curiam), and Scales was the only female to make the "highly-qualified" initial list, the only evidence that she offers on appeal to prove discrimination is the fact that, shortly after the time of the events in question, only 1.9% of the FAA's employees in the GS 13-15 range were African-American females. This evidence is utterly insufficient to establish disparate impact. It fails to draw a comparison between the percentage of minorities in the workforce and the percentage of qualified minorities in the relevant candidate pool. In addition, as we observe *infra*, the "key selection factors" had a decidedly race-neutral impact, making the hurdle of overcoming the FAA's articulated nondiscriminatory reasons too high for Scales's statistical evidence to overcome. Cf. Equal Employment Opportunity Comm'n v. Texas Instruments Inc., 100 F.3d 1173, 1184 (5th Cir. 1996) (observing that statistical evidence will rarely serve to rebut an employer's articulated nondiscriminatory reason).

[6] "Direct evidence" cases are those in which the evidence would serve to prove unlawful discrimination "without any inferences or presumptions." Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993).

Significantly, a plaintiff must establish *all four elements* of the case in order to prove that she was treated differently. See Garcia v. Woman's Hosp. of Texas, 143 F.3d 227, 230 (5th Cir. 1998) (per curiam). Once a plaintiff has established the prima facie case, the burden of production shifts to the defendant to explain the circumstantial evidence of discrimination by demonstrating a legitimate, nondiscriminatory reason for the employment action. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-56 (1981); McDonnell Douglas, 411 U.S. at 802. If the defendant carries this burden, then the analysis shifts to the broader question whether the defendant intentionally discriminated against the plaintiff. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993). A successful plaintiff at this point must demonstrate that the defendant's articulated nondiscriminatory rationale was pretextual. See Burdine, 450 U.S. at 253; McDonnell Douglas, 411 U.S. at 804. To show pretext, a plaintiff must provide evidence showing that the asserted reason was false and that discrimination was the actual motivation. See St. Mary's, 509 U.S. at 515. In fact, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Id. at 511.

**1**

We agree with the district court that Scales did not meet her burden of proof under prongs two and four of the McDonnell Douglas test. Although Scales is a member of a protected class and she sought the GCSMO position, she did not put forward summary judgment evidence demonstrating that she was qualified for the position. Although she met the minimum qualifications laid out in the December 1994 advertisement, Scales admits that she did not satisfy the additional individualized qualifications set by Lewis because she did not have managerial experience as a second-level supervisor in a GNAS organization.

Scales attempts to overcome this obstacle by suggesting that she was qualified for the position as originally advertised and that any subsequent narrowing of the field was tantamount to weeding out members of the protected class who were otherwise qualified for the position. We find this

argument meritless, principally because the support she offers for this conclusion is not on point. It is undisputed that Lewis had the discretion to consider additional qualifications and that Scales did not meet those qualifications. As we will explain below, that discretion was properly granted to Lewis.

Scales argued to the court below and again in her brief to this court that the Civil Service Reform Act of 1978 ("CSRA"), Pub L. No. 95-454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), prohibited the actions that the FAA took with respect to her application for promotion. In particular, she cites portions of the CSRA that (1) allow agencies to make appointments only from among properly ranked and certified candidates for promotion, see 5 U.S.C. § 2301(b)(1) (1994); and (2) prohibit selecting officials from granting any preference or advantage to one applicant for the purposes of hindering the chances of another applicant. See id. § 2302(b)(6).

Scales further argues that Lewis violated two internal FAA rules. First, he ignored the Merit Promotion Plan policy that "[a]fter the selection list is issued, there will be no further reduction of number of eligibles referred to the selecting official through the means of any other rating procedures." Second, internal rules required that "all candidates on the promotion list are to be given an equal opportunity to be interviewed by the selecting official. This means that if one is interviewed, all should be interviewed."

Scales's argument is not persuasive for a number of reasons. First, while in the abstract an agency's variance from its own hiring procedures may be "evidence of discrimination," Johnson v. Lehman, 679 F.2d 918, 922 (D.C. Cir. 1982), Scales does not offer the evidence here that qualitatively would support such an inference. The rules that Lewis allegedly violated were internal procedures of the FAA; they were neither imposed by statute nor promulgated through the regulatory process. Although an agency may certainly discriminate on a purely internal level, the cases that Scales cites do not support the conclusion that the agency's deviation from policy here constituted discrimination.

7

Second, Scales does not even allege that there was a "reduction of number of eligibles *referred to the selecting official*" after the selection list was prepared; to the contrary, she claims that Lewis, the selecting official himself, reduced the number of eligibles.

Third, and most persuasively, the motivations behind these internal policies that eventually led to the advertisement for the Assistant Manager position effectively estops Scales's discrimination claim. The position was created as part of an FAA-wide reorganization implemented to comply with the Government Performance and Results Act of 1993, Pub. L. No. 103-62, 107 Stat. 285 (codified in scattered sections of 31 U.S.C.), and Vice-President Gore's "reinventing government" initiative. The Airway Facilities Division published a "Road Map" to the reorganization that set forth the steps to be taken to fill positions—including the Assistant Manager position in the instant case—created by the reorganization. Pursuant to the Road Map, "standardized crediting plans" were to be used on a national basis in order to rank candidates for consideration and to arrive at a list of eligible candidates. The Road Map further provided that, "[f]ollowing the establishment of a list of eligible candidates, each region will be responsible for the development and conduct of its own evaluation process" and that the "area of consideration may be tailored to the specific situation and the needs of the selecting official."

Significantly, the FAA at this time decided to expand its search to include Merit Promotion candidates, individuals who had not been pre-screened and pre-qualified by the Airway Facilities National Selection System ("AFNSS"). AFNSS applicants for high-level supervisory positions had already undergone rigorous testing, at both regional and national levels, designed to test managerial competency and expertise. The FAA's decision to waive the AFNSS pre-qualification requirement was designed to increase the diversity of the pool of available candidates. Absent this modification of the FAA's usual policies, Scales, who had not been pre-qualified by AFNSS, would not have been eligible to apply for the GCSMO position.

Pursuant to this revised policy, the December 1994 announcement, in setting forth the minimum qualifications for the positions in question, included six "standardized" criteria to be used

8

in rating and ranking the candidates and producing a promotion list. Any AFNSS candidates and internal FAA candidates with prior GS-15 experience automatically made the promotion list; as indicated above, Scales was not in either group. The revised policy led to the referral of an unprecedented number of eligible candidates to the selecting official.

While it is true that FAA policy required selecting officials to interview either all or none of the eligible candidates on a promotion list, given the unusually high number of eligible candidates created by the waiver of the AFNSS requirement, the FAA gave the selecting officials the discretion to interview some but not all of the candidates on the list. The working group that helped to formulate the decision to set aside the usual interview requirement was ethnically diverse; indeed, both the head o f the Southwest Region and Lewis himself were members of ethnic minorities. Subsequently, and pursuant to the Road Map, Lewis determined which criteria he would consider in selecting an Assistant Manager. He appropriately documented the criteria and then employed them when determining whom to interview. Significantly, he testified in his deposition that, even had he interviewed all 31 applicants, he would have applied the same criteria in eventually selecting the Assistant Manager; his authority to do so in that event is undisputed.

Of course, the FAA had no less authority to set aside the interview requirement than it did the requirement that applicants for the GS-15 positions in question first pre-qualify under the AFNSS system. Both represented modifications of agency policy as set forth in the FAA's internal procedures necessitated by the reorganization. Without the latter modification, Scales would not have been eligible even to bid for the position in question. In any case, evidence of departures from prior procedures does not suffice to defeat summary judgment in a discrimination case unless there is some evidence that the departures were meant to be discriminatory. See Texas Instruments, 100 F.3d at 1182; Risher v. Aldridge, 889 F.2d 592, 597 (5th Cir. 1989). Here, it is undisputed that the "key selection factors" were applied in the same way to all candidates without regard to race, gender, or national origin, that only qualified candidates were interviewed, and that application of the factors affected minority candidates in a race-neutral way.

We are persuaded that, in the absence of any inference that the narrowing was designed to eliminate African-American female candidates, the FAA was simply doing what any employer would do: whittling to a manageable number a group of qualified candidates for a single position. We find nothing proscribable about the manner in which the FAA elected to take that step.

**2**

In the alternative, we note that, even if Scales could prove that she was qualified for the position (prong two of the McDonnell Douglas test), she nonetheless abjectly fails to prove prong four. As noted above, while Scales made the first cut for the GCSMO position, she was not selected for the group of nine that followed Lewis's imposition of the additional criteria. The individual eventually selected from the position was a member of that smaller group. Consequently, the FAA did not continue "to seek applicants with the plaintiff's qualifications," as McDonnell Douglas requires, but instead interviewed previous applicants who it viewed as more qualified than Scales. Since Scales does not meet this prong of the test, her claim would be properly dismissed on this ground alone. See McDonnell Douglas, 411 U.S. at 802; Grimes, 102 F.3d at 140; LaPierre, 86 F.3d at 448.

**3**

We also agree with the district court that, even assuming, *arguendo*, that Scales had established the prima facie case, she could not prove that the FAA's stated reasons for narrowing the applicant pool were pretextual. This conclusion flows logically from our reasoning above. The FAA demonstrated that, while Lewis knew who the candidates were before he mechanically applied the criteria to their applications, he had established the criteria before knowing who the applicants in the larger pool were or what their racial or gender characteristics were; he only chose those characteristics, the FAA avers, in order to limit the number of candidates to a more reasonable number. Additionally, the FAA demonstrated that the criteria adversely affected *non*protected groups more than protected ones. While such evidence is not dispositive, it is "a significant consideration[] in evaluating a claim" of discrimination. Smith v. Berry Co., 165 F.3d 390, 395-96 (5th Cir. 1999).

Scales offers no explanation why we should not place such emphasis on the FAA's actions in this case.

It is undisputed that Lewis only interviewed candidates with second-level supervisory experience in a GNAS organization, that Scales lacked such experience, and that Scales was told that it was this very lack of experience that disqualified her from receiving an interview. The indisputable application of the same standard to all candidates demonstrates that Scales was not interviewed for reasons unrelated to race, gender, or national origin. In fact, basing a promotion decision on an assessment of qualifications will almost always qualify as a legitimate, nondiscriminatory reason.

Indeed, her only evidence of discrimination *at all* consists of Drake's alleged comment that she find a "black mentor" and statements made in an old newspaper article that suggested that the FAA had discriminatory animus toward African-Americans and women. The problem with viewing these statements as anything more than stray remarks is that there is *no* evidence that either statement was connected to the FAA's hiring process for the GCSMO position or that such animus informed the creation of Lewis's selection criteria. Stray remarks with no connection to an employment decision cannot create a fact issue regarding discriminatory intent and are insufficient to defeat summary judgment. See Price v. Marathon Cheese Corp., 119 F.3d 330, 337 (5th Cir. 1997); Texas Instruments, 100 F.3d at 1181; Ray v. Tandem Computers, Inc., 63 F.3d 429, 434 (5th Cir. 1995). Since Lewis did not know who the individuals were in the larger pool when he designed the criteria, there is no evidence to support the inference that the criteria were discriminatory in nature. Scales has simply provided no evidence that the criteria were created as a pretext for discrimination. Consequently, summary judgment was proper because Scales failed to establish the McDonnell Douglas prima facie case; even assuming that she had proved the case, she failed to demonstrate why the criteria were pretextual.

## III

For the reasons given above and those adverted to in the district court's order, we AFFIRM the grant of summary judgment in favor of the FAA.