# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 99-50753
Summary Calendar

LINDA K. CURRY,

Plaintiff-Appellant,

versus

FIRST USA BANK ; FIRST USA MANAGEMENT SERVICES, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
(A-98-CV-528-SS)

March 1, 2000

Before HIGGINBOTHAM, DeMOSS, and STEWART, Circuit Judges

PER CURIAM:[*]

Linda K. Curry ("Curry") appeals the grant of summary judgment in favor of First USA Management Services, Inc. ("First USA") for alleged employment discrimination, pursuant to Title VII of the Civil Rights Act of 1964. For the following reasons we affirm the district court's ruling, finding that Curry failed to show that race discrimination was the impetus for her discharge from First USA.

### STATEMENT OF FACTS

Linda Curry was employed by First USA as a Card Member Services Supervisor (CMS Supervisor") from November of 1993 until December of 1995. She was also concurrently employed by TeleServices Resources Inc. as a supervisor throughout that time. As a CMS Supervisor at First USA, Curry was responsible for the overall supervision of her team of advisors who handled requests from cardholders over the phone, regarding balance inquiries, lost credit cards, annual percentage rate

---

[*]Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

adjustments, late fees and the like. Among other supervisory duties, Curry was responsible for preparing various reports on her team's performance as well as assisting her advisors with calls from sometimes irate customers.

In June of 1994, following an incident in which Curry arrived over two hours late for work, she was counseled regarding the concern that her second job was affecting her performance at First USA. First USA asked her to choose between jobs. Apparently, First USA withdrew the request when Curry insisted that her job at First USA would take priority.

Between late August and early October of 1994, three of Curry's subordinates submitted written complaints about Curry's unwillingness to assist them with calls from irate card members. Shortly thereafter, Curry received her annual review, where of the twelve areas evaluated she received seven ratings of "Needs Improvement". Her overall job performance was also rated as "Needs Improvement". She was subsequently placed on "written counseling for a period of 6 months" by her supervisor Pam MacDonald. From November 1994 to February 1995 Curry was reprimanded five times for failure to give timely feedback to her team and other performance related complaints. Curry was warned that further occurrences would result in her termination.

Within a month of that discussion, three of Curry's subordinates complained about Curry's lack of assistance and supervision as well as her failure to process vacation requests, and provide copies of time sheets and other supplies. After Pam MacDonald discussed these complaints with Curry, MacDonald placed Curry on probation for six months, again warning her that further incidents would result in her termination.

Curry was asked to create an action plan to address her performance problems. As a result of further complaints, Curry's probationary period was extended through the end of October 1995. At an early October meeting between Curry, Scott Nelson (Pam MacDonald's supervisor) and a human resources representative, Curry was informed that it was "critical" that changes be made in her performance, particularly in regards to supporting her staff. Curry's probationary period was again extended for another ninety days during which Curry and MacDonald would meet weekly and monthly to discuss Curry's performance. At that time MacDonald also recommended to Nelson that

he fire Curry. Curry continued to have performance problems in the following months. First USA terminated Curry in December of 1995.

On August 19, 1998 Curry filed an employment discrimination complaint under Title VII of the Civil Rights Act of 1964 alleging that First USA discriminated against her on the basis of race. This followed her receipt of a right to sue letter from the E.E.O.C. On May 21, 1999 First USA filed a motion for summary judgment. The district court granted summary judgment in favor of First USA on July 1, 1999 constituting a final order from which Curry timely appealed.

DISCUSSION

We exercise de novo review of a district court's grant of summary judgment. See *Reliance Nat. Ins. Co. v. Estate of Tomlinson*, 171 F.3d 1033, 1035 (5th Cir.1999). A court appropriately enters summary judgment in favor of the moving party if the record, taken as a whole, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual dispute exists if a reasonable jury could return a verdict for the nonmoving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (a material fact is one that might affect the outcome of the case under the governing law). We consider the evidence bearing on the applicable law, viewing the facts in the light most favorable to the nonmoving party. See *Scales v. Slater,* 181 F.3d 703, 708 (5th Cir. 1999).

Under Title VII, an employer may not "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such person's race." 42 U.S.C. §2000e-2(a). To establish a prima facie case of employment discrimination, a plaintiff must either produce direct evidence of an employer's racial animus, or produce enough facts to implicate the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

This Circuit has explicitly held the *McDonnell Douglas* formulation applicable to discharge cases. *Marks v. Prattco,* 607 F.2d 1153,1155 (1979). To make out a *prima facie* case, a plaintiff must

show (i) that she is a member of a racial minority group; (ii) that she was qualified for the job from which he was discharged; (iii) actual discharge; and (4) after discharge, that the employer filled the position in question with a nonminority person. *Id.* at 1154.

Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant employer to articulate some legitimate, nondiscriminatory reason for its decision. See *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the employer meets this test, the burden then shifts back to the plaintiff to prove that the articulated reason is pretextual. The plaintiff cannot succeed by proving only that the defendant's proffered reason is pretextual rather, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Walton v. Bisco Industries, Inc.,* 119 F.3d 368, 370 (5th Cir. 1997) quoting *Hicks,* 113 S.Ct. at 2751 (emphasis in original). At all times the plaintiff bears the burden of persuasion on the ultimate issue of intentional discrimination. *Id.* at 2749.

Curry fails to establish a *prima facie* case of employment discrimination. There is no evidence in the record before us of racial animus on the part of First USA. Further, Curry does not fulfill the necessary elements to initially establish her race discrimination claim. Curry is an African-American woman, a member of a minority group, who was discharged from employment at First USA. There is no dispute that Curry was qualified for the job of CMS Supervisor. However, Curry does not complain that she was replaced by a non-minority individual.

Even assuming that Curry succeeded in making a *prima facie* showing, there is no evidence before us which indicates that the impetus for Curry's termination was race discrimination. The record supports First USA's proffered reasons for Curry's termination; numerous documented incidents of poor performance on Curry's part.

Curry essentially argues that a double standard was imposed on her in regards to First USA's treatment of her performance problems. She argues that Pam MacDonald suffered from similar performance problems, although she was not similarly terminated. MacDonald was similarly situated to Curry for the first six months of her employment. After that, MacDonald was promoted and

became Curry's supervisor. Thus, MacDonald was Curry's superior, and not similarly situated, for the majority of the time period relating to this appeal. Further, there is little indication from the record of any performance problems on MacDonald's part. We cannot conclude that comparable misconduct by Curry and MacDonald occurred, prior to MacDonald's promotion, without evidence to support the assertion that McDonald's performance was deficient in the first place.

In any event, First USA kept Curry on as an employee for over a year after MacDonald's promotion, with repeated counseling sessions and probationary periods, giving Curry a chance to improve. Curry clearly disagrees with her supervisor's evaluations of her performance and with the admittedly rigid evaluation process used by First USA. None of these however, offers support to the claim that First USA terminated Curry because of race discrimination.

CONCLUSION

We find that Curry does not meet the burden imposed on plaintiffs in Title VII disputes and thus AFFIRM the district court's grant of summary judgment in favor of First USA.