**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 7, 2012

No. 11-20391

Lyle W. Cayce
Clerk

LINDA CRINER,

Plaintiff - Appellant

v.

TEXAS - NEW MEXICO POWER COMPANY; PNM RESOURCES, INCORPORATED; TNP ENTERPRISES, INCORPORATED; FIRST CHOICE POWER, LIMITED PARTNERSHIP,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-3859

Before STEWART, CLEMENT, and GRAVES Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Linda Criner, a black woman, filed suit against her employer, Texas-New Mexico Power Company ("TNMP" or the "Company"), and various related entities (the "Defendants"), alleging race and sex discrimination claims under 42 U.S.C. § 2000e-2 ("Title VII"),  and race discrimination claims under 42 U.S.C. § 1981. She asserted both disparate treatment and disparate impact

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20391

theories. The Defendants moved for summary judgment on Criner's claims, and the district court granted their motion and dismissed all her claims. We AFFIRM.

## FACTS AND PROCEEDINGS

Criner has worked for Texas-New Mexico Power as a community affairs specialist since 1994. She alleges that she has consistently asked her supervisors what training she needs to become eligible for promotions and to make that training available to her. In May 2006, when a customer service manager position opened ("Customer Service" position), Criner was not given an opportunity to interview for the position. In November 2006, a Retail Electric Provider Liaison-Manager position became available ("Manager" position). Criner alleges that she had to email company management to get the job posted and only then received an interview. She alleges that she was qualified for the position, but that the job went to a white male because, in part, she was not given the training opportunities the white male received to become eligible for the position. Finally, in December 2006, a lobbyist position became available at the company ("Lobbyist" position), and a white male was hired without the Company posting the job or providing other employees with an opportunity to interview for it. After petitioning the Equal Employment Opportunity Commission ("EEOC") and receiving permission to bring suit, Criner brought suit under Title VII and 42 U.S.C. §1981 against Defendants alleging discrimination based on her race and gender in not hiring her for the three positions. TNMP moved for summary judgment.

*Disparate Treatment*

The district court found that her disparate treatment claims regarding two of the three promotions—relating to the Customer Service and Lobbyist positions—were abandoned because she did not address them in her response to the Company's motion for summary judgment. With regard to the Manager

2

No. 11-20391

position she interviewed for, the Company conceded that she had pled a prima facie case of discrimination. On motion for summary judgment by the Company, the district court found that the person hired, a white male, was clearly better qualified for the Manager position. In rejecting all of Criner's disparate treatment claims, the Court employed a pretext analysis, instead of a mixed-motive analysis, even though Criner asserted in her complaint that the mixed-motive analysis applied to her three disparate treatment claims.

*Disparate Impact*

In her response to summary judgment, Criner also asserted a disparate impact claim stating that she was not provided with the same opportunities for training and career advancement as whites in the company. She alleged that management only befriended whites and that they awarded promotions to their friends, thereby restricting the opportunities of blacks for advancement. She also provided two affidavits of former and current black employees. The district court found that she did not have a prima facie case of disparate impact discrimination and that the defendants were entitled to summary judgment on that issue.

## STANDARD OF REVIEW AND APPLICABLE LAW

We "review[] a district court's grant of summary judgment *de novo,* applying the same legal standards as the district court. Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005) (citation and internal quotation marks omitted). "An issue as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Kujanek v. Hous. Poly Bag I, Ltd.*, 658 F.3d 483, 487 (5th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Judicial review of discrimination claims is "not intended to be a vehicle for judicial second-guessing of employment decisions, nor [is] it intended to

No. 11-20391

transform the courts into personnel managers." *Bodenheimer v. PPG Indus. Inc.,* 5 F.3d 955, 959 (5th Cir. 1993). To find for the plaintiff in an employment-discrimination context, this court must find that there was an impermissible motive in making the employment decision. *See LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383, 391 (5th Cir. 2007). Employers are entitled to summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 148 (2000).

## DISCUSSION

### A. Disparate Treatment

*Customer Service Position*

Criner claims that she was passed up for the Customer Service position because of her race and gender. The Company contends that she was not passed up for any position, but that because of a corporate reorganization precipitated by the unit head leaving the Company, additional responsibilities were given to a person who was already in a Customer Service position. Because of the reorganization, this person was given some managerial duties over meter readers and team assistants in addition to his previous duties. The person who took the position, Roy Jackson, had extensive prior management experience, has a CPA, was with the company for over 20 years, and had previously supervised people in a similar capacity as he would under the new job. Criner alleged in her complaint that she was "clearly more qualified" than Jackson, yet during her deposition she did not know the duties of the job, what background was needed, and admitted she had never managed or supervised other people at TNMP and did not have any experience with the installations or maintenance that were part of the responsibilities of the job.

4

No. 11-20391

The district court dismissed this claim because she failed to defend it in her response to the Company's motion for summary judgment. Under Federal Rule of Civil Procedure 56(c)(1)(A), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." *See also Scales v. Slater*, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (noting that the plaintiff abandoned her disparate impact claim in district court when she neither contested defendant's arguments for dismissal of that claim nor demonstrated that her statistical evidence demonstrated pretext).

In responding to this dismissal on appeal, Criner cites to the following part of her response to the motion for summary judgment to show that she defended this claim:

> Defendants [sic] articulated reasons for hiring Roy Jackson for the Customer Service position fail to overcome the inference of discrimination because while Defendants allege that Roy Jackson had management experience, Defendants fail to address Plaintiff's contention that she had been denied opportunities to act as a supervisor or manager.

The problem with this argument is that it is not clear from her initial response whether she was defending the disparate treatment claims, or arguing a disparate impact claim. The surrounding sentences in that paragraph of her response all cite to cases that she describes as involving disparate impact claims. In the sentence following the one she now cites, Criner argued "[D]efendants have failed to explain why Mr. Jackson's hiring . . . is not an example of exactly the sort of disparate treatment that Plaintiff alleges has a *disparate impact* on her and other minorities in her class." (emphasis added). It is unclear from her arguments, both in response and in her briefing before this court, how she has not waived her disparate treatment claim when the statement she has put forth to support non-waiver is in fact a disparate impact argument. Because Criner

did not make a disparate treatment argument before the district court, it is waived as it relates to the Customer Service position. "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002).

*Lobbyist Position*

Criner claims that she was passed over for a promotion to the Lobbyist position that also went to Jackson. This position needed to be filled shortly after Jackson took the Customer Service position, when Ernie C'deBaca, a Vice President of Government Affairs for TNMP's sister company, PNMP, decided that he needed a full-time presence at the Texas Legislature. This position was not posted and no one applied for the position because time was of the essence as the state legislative session was about to begin. According to TNMP, C'deBaca explained this need to TNMP's Vice President, Neal Walker, who in turn suggested loaning Jackson to C'deBaca to fill the immediate need. C'deBaca interviewed Jackson twice and temporarily assigned him to the Lobbyist position. It is unclear if anyone else was considered for this position. Jackson's previous job, the Customer Service position, went unfilled.

Criner alleged in her complaint that she was clearly more qualified for the Lobbyist position than Jackson and that she was discriminated against based on race and gender. As with the Customer Service position, which also went to Jackson, Criner could not state during her deposition what the responsibilities of the position were, nor could she describe Jackson's qualifications. In addition, Criner was not known to C'deBaca, who only knew of Jackson because he was offered as a loan from Walker.

The district court deemed Criner's disparate treatment claim regarding the Lobbyist position waived for her failure to press it in the response to the

No. 11-20391

motion for summary judgment. Criner cites to the following portion of her response as adequate to preserve her disparate treatment claim:

> Defendants' articulated reasons for hiring Roy Jackson for the lobbyist position fails [sic] to overcome the inference of discrimination, because Defendants have failed to explain why Mr. Jackson's hiring for an unpublicized position based on a word-of-mouth recommendation is not an example of exactly the sort of *disparate treatment* that Plaintiff alleges has a *disparate impact* on her and other minorities in her class.

(emphasis added). While this is a confused argument since it uses the terms disparate treatment and disparate impact together, the immediately adjoining citation makes it clear that Criner's response raised only a disparate impact rather than a disparate treatment claim:

> *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000)(where the Fifth Circuit Court of Appeals held that *unlike disparate treatment*, *disparate impact* claims do not require evidence of an intent to discriminate, only that a facially neutral policy results in disparities and disadvantages to a protected group).

(emphasis added). Because she did not defend her disparate treatment claim as it related to the Lobbyist position, the district court dismissal was proper, and Criner has not preserved the argument for appeal.

*Manager-REP Liaison*

Criner also argues disparate treatment for her failure to be awarded a Manager position.[1] Five people applied for this position including Criner. The position required managing field operations personnel, implementing a new software program, overseeing future software projects, assisting with tariff compliance and fees, creating procedures for trading purchase agreements, and assisting in some oversight of customer care. All applicants were interviewed

---

[1] This position was open in between the Customer Service and Lobbyist position opening.

No. 11-20391

by a three-member panel and were separately graded on a scale of 1-5. The scores were totaled and Criner received the second highest score of 68. The person who ultimately received the position, Tim Gerdes, received a score of 125. As the district court correctly noted, "[A]lthough Plaintiff had a college degree, which Gerdes did not, Gerdes had prior experience implementing new software programs and also had previous management experience within the Power Company and its affiliate, First Choice."

Although Criner alleged in her complaint that mixed-motive analysis applied, the district court dismissed her disparate treatment claim using pretext analysis.[2] The district court found that she did not support that assertion in her presentations to the court stating, "she has presented no evidence or arguments relating to a mixed-motive theory of discrimination. Because she has not advanced a mixed-motive theory, her claim is analyzed only for evidence of pretext." We agree with this conclusion.

TNMP did not mention the mixed-motive analysis in its summary judgment filings, and Criner did not press the mixed-motive analysis in her response. In fact, the terms "mixed-motive" appeared nowhere in her initial response to TNMP's summary judgment motion or in her supplemental response. This court has previously held that in a mixed-motive case, if "a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court." *Keelan*, 407 F.3d at 340 (internal quotation marks omitted). An argument must be raised to such a degree that the district court has an opportunity to rule on it. *Id*. The district court need not sift through the record for evidence supporting a party's

---

[2] To satisfy the mixed-motive theory, a plaintiff need only demonstrate that her protected characteristic was one factor in the company's decision not to promote her. The company then must establish that the same adverse employment decision would have been made regardless of discriminatory intent. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332 340-41 (5th Cir. 2005).

No. 11-20391

opposition to summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Criner did not adequately press a mixed-motive argument before the district court. As such, the district court was correct in applying the pretext analysis to Criner's claims because Criner waived her mixed-motive theory.

Having determined that the district court properly applied a pretext analysis, we must review the court's ultimate decision to grant summary judgment to the defendants. This court uses the *McDonnell Douglas* burden-shifting framework to evaluate Criner's discrimination claims. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[3] Under *McDonnell Douglas*, Criner must first create a presumption of unlawful discrimination by showing evidence of a prima facie case. To establish the prima facie case for her failure to promote claim, she must show that: 1) she is a member of a protected class; 2) she sought and was qualified for an available position; 3) she was not selected; and 4) the Company either awarded the position to someone outside the protected class, or continued to seek applicants with the same qualifications as Criner. *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680-81 (5th Cir. 2001). Once Criner articulated a prima facie case, the Company was required to articulate and produce evidence of a legitimate, non-discriminatory reason for its actions. Because the Company had done so, the burden shifts back to Criner to show that the reason is merely pretext for discrimination. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004).

Both parties agree that Criner established a prima facie case. The company offered up the non-discriminatory reason that Gerdes was more

---

[3] As the district court correctly noted, "[B]ecause claims of intentional discrimination brought under Title VII and Section 1981 require the same proof to establish liability, Plaintiff's discrimination claims [can] be analyzed under the Title VII rubric of analysis." (quoting *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 422 n.1 (5th Cir. 2000)) (internal quotation marks omitted).

qualified. The burden therefore shifts back to Criner who can either 1) show that the explanation is false or unworthy of credence; or 2) prove she is clearly better qualified than the person selected for the position. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). The district court found that Criner presented no evidence that TNMP's explanation was unworthy of credence. As she did at the district court, Criner hinges her arguments before this court on the subjective nature of the hiring decision and the interview process. In addition, she lists numerous reasons only tangentially related to the ultimate hiring decision for the Manager position.  Of those reasons, only two have any merit. First, Criner argues that she has a college degree and Gerdes does not.  Second, she argues that one of the members of the interview panel is friends with Gerdes and suggested he apply for the job opening, but did not suggest the same to Criner or any other black employee.

These two factors are inadequate to show that TNMP's non-discriminatory reason for hiring Gerdes was false or unworthy of credence. At best they show that there were subjective factors that went into the interview process, e.g., the weighing of experience versus education credentials—something that no one disputes. The Supreme Court has stated numerous times that a subjective decision making process does not raise inferences of discriminatory conduct. *See Watson v. Forth Worth Bank & Trust*, 487 U.S. 977, 990 (1998) ("[A]n employer's policy of leaving promotion decisions to the unchecked discretion of lower level supervisors should itself raise no inference of discriminatory conduct."); *see also McDonnell Douglas,* 411 U.S. at 798 (rejecting the premise that, because the "stated reason for refusing to rehire respondent was a subjective rather than objective criterion," that reason was entitled "little weight in rebutting charges of discrimination"). In addition, this court has previously decided that an employer's decision to hire an individual without a college degree, but with substantial relevant work experience, over an individual with a college degree

is not sufficient to establish pretext. *See Price v. Fed. Express Corp.*, 283 F.3d 715, 722-23 (5th Cir. 2002). On the whole, Criner failed to present sufficient evidence from which a fact finder could reasonably conclude the Company's proffered reason was false.

Criner therefore must show that she was clearly more qualified for the job than Gerdes. The district court found that she could not do this, and we agree. Not only did Gerdes have significant experience both managing individuals and implementing and overseeing software—two areas in which Criner lacked experience—the score on the interviews is evidence she was not as qualified as Gerdes. Barring some indication that the questions or scores were tainted by racial preferences or bias, they are objective indicators that Gerdes was better qualified. Considering the interview scores and Gerdes' superior experience, a jury could not conclude that Criner was clearly better qualified. We therefore affirm the grant of summary judgment in favor of the defendants as it applies to Criner's disparate treatment claims.

## B. Disparate Impact

In her response to TNMP's motion for summary judgment, Criner also argued a disparate impact claim, stating that her lack of qualifications for promotion was attributable to Defendant's failure to provide her with the same training and career opportunities provided to white employees. To support this allegation, she offered testimony from two other black employees suggesting that TNMP is a racist employer. She also presents non-aggregated statistical data that supposedly shows that blacks are minorities at TNMP and are not in management positions. The district court rejected this argument and granted summary judgment to the Company.

After reviewing the proceedings below, we hold that Criner waived her disparate impact claims by presenting them for the first time in her response to a motion for summary judgment. *See Cutrera v. Bd. of Supervisors of La. State*

*Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court").

## CONCLUSION

We therefore AFFIRM the decision of the district court regarding Criner's disparate treatment and disparate impact claims.