# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 6, 2013

Lyle W. Cayce
Clerk

No. 12-10730
Summary Calendar

ALEXANDER ASSARIATHU; REENA ASSARIATHU; DEVI PILLAI;
SUSAN MATHEW; RADHADEVI PILLAI; KURIAN JOSEPH;
THOMAS THOMAS; SHINY ABRAHAM,

                              Plaintiffs-Appellants,

versus

LONE STAR HEALTH MANAGEMENT ASSOCIATES, L.P.,
a Subsidiary of Health Management Associates, Inc.,
Doing Business as Dallas Regional Medical Center;
HEALTH MANAGEMENT ASSOCIATES, INCORPORATED,

                              Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:11-CV-99

No. 12-10730

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Eight respiratory therapists of Indian national origin appeal a summary judgment dismissing their employment-discrimination and retaliation claims against former employer Lone Star Health Management Associates, L.P., doing business as Dallas Regional Medical Center ("DRMC"), and DRMC's parent, Health Management Associates, Inc. ("HMA"). We affirm.

I.

In 2008, DRMC hired Christiaan Evans to head its respiratory department. In mid-2009, Evans and DRMC human resources director Alayne Sewick developed a proposal, to restructure the department, that was reviewed and approved by HMA human resources director Linda Herriage. As part of the restructuring, which was announced to department members in November 2009, all respiratory therapists were required to re-interview for their jobs.

Evans and Sewick devised ten interview questions that Evans asked each therapist. The first nine were scored on a scale of 1 to 5 and were designed to test one of the following characteristics: overall attitude (four questions), abilities (three), knowledge (one), and skills (one). An "extra credit" question, worth three points and intended to assess knowledge, skills, and abilities, asked, "What do you bring as an employee to DRMC?"

Evans took notes while conducting the interviews. Sewick and Evans subsequently awarded each employee a composite scored based on Evans's notes, Evans's recollections of the interviews, and some extrinsic evidence, including

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10730

performance appraisals. The maximum score was 48, and DRMC terminated all fifteen therapists—including seven of eight plaintiffs—who scored below 24. Plaintiff Kurian Joseph scored above 24 but was also terminated; he had received a corrective counseling in the previous year.[1]  In total, sixteen of DRMC's thirty-two respiratory therapists were fired:  Twelve were Asian, one was black, and three were white.  Of the sixteen remaining, seven were Asian, two were black, and seven were white.  Between January and June 2010, DRMC hired ten new therapists, seven of whom were white.

Before his termination in December 2009, A. Assariathu anonymously called the DRMC compliance hotline and accused Evans of racial discrimination against Indian employees, including in the restructuring process.  Herriage assigned Sewick to investigate the complaint despite Sewick's integral role in the restructuring.[2]  In the course of her investigation, Sewick interviewed several respiratory therapists, including plaintiffs A. Assariathu, Thomas Thomas, and Radhadevi Pillai ("R. Pillai").  Sewick also asked Evans, who was unaware of the complaint against him, to provide data on his hiring practices since taking over the department.[3]  After completing her investigation, Sewick determined that the restructuring was not discriminatory and that Evans had not otherwise engaged in discrimination.

After being fired, the plaintiffs commenced Equal Employment Opportunity Commission proceedings against DRMC, then sued DRMC and HMA, asserting discrimination under the Texas Commission on Human Rights Act

---

[1] Four other terminated therapists, including plaintiffs Alexander Assariathu ("A. Assariathu") and Devi Pillai ("D. Pillai"), had received corrective counseling in the year before their termination; all four also scored below 24.

[2] The complaint did not, however, accuse Sewick of wrongdoing.

[3] According to DRMC, the data showed that Evans had hired or promoted nine minority therapists (of unspecified ethnicity) and eight white therapists.

No. 12-10730

("TCHRA"), Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. The district court granted summary judgment to DRMC and HMA on all claims.

## II.

> We review a summary judgment *de novo*, "using the same standard as that employed by the district court under Rule 56." *Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

*Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012).

Under the TCHRA, "[a]n employer commits an unlawful employment practice if because of race . . . the employer . . . discharges an individual or discriminates in any other manner against an individual." TEX. LABOR CODE ANN. § 21.051. Discrimination under Title VII occurs if an employer terminates or fails to promote an employee "because of" a protected characteristic, including race. 42 U.S.C. § 2000e–2(a)(1). "Moreover, an employer's action will be found unlawful if the employee can demonstrate that her race was 'a motivating factor' for her firing, even if the employer was also motivated by other lawful factors." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). Section 1981(a) guarantees that "[a]ll persons within the jurisdiction of the United States . . . shall have the same right . . . to make and enforce contracts" regardless of race.

## III.

The same evidentiary framework governs discrimination claims brought under the TCHRA, Title VII, and § 1981. *Shackelford v. Deloitte & Touche,LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999). We apply the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), and its progeny. *Vaughn*, 665 F.3d at 636. A plaintiff must first demonstrate a *prima facie*

No. 12-10730

case, after which the burden of production shifts to the defendant to proffer a legitimate nondiscriminatory reason for its decision. The presumption of discrimination drops out if the defendant presents a nondiscriminatory reason. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). The plaintiff, who always carries the ultimate burden, "must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal marks and citation omitted).

A.

Because DRMC and HMA do not contest that plaintiffs have presented a *prima facie* case of racial discrimination, our analysis begins with DRMC and HMA's articulated nondiscriminatory reason for the terminations: departmental restructuring, citing the seven low scores in the interviews with Evans, and, in the case of Joseph, prior corrective counseling. Plaintiffs do not dispute that poor job performance is a legitimate, non-discriminatory reason for termination. *See Little v. Republic Ref. Co.*, 924 F.2d 93, 96 (5th Cir. 1991). Therefore, DRMC and HMA have met their burden of production with regard to Joseph.

Plaintiffs do contend that, despite producing the low interview scores of the seven other plaintiffs, DRMC and HMA have not articulated a legitimate, non-discriminatory reason, because the justification for the scores is not "clear and reasonably specific."[4] In *Alvarado*, 492 F.3d at 617, we held that the employer did not meet its burden where the raw interview scores it produced for

---

[4] *Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981)).

No. 12-10730

Alvarado were accompanied by "neither an explanation nor evidence of how or why the interviewers arrived at those scores." *Alvarado* is inapposite, however, because "this is simply not a case where the defendant relies on nothing more than a unexplained interview score that might be consistent with discriminatory intent." *Joseph v. City of Dall.*, 277 F. App'x 436, 441 (5th Cir. 2008) (per curiam). Although conceding that Evans's interview notes were lost, DRMC and HMA have extensively explained the scores through deposition testimony and the production of documents, including the interview questions and the characteristic each question was intended to assess. Whether those explanations are *true* is another matter, discussed *infra*, but DRMC and HMA have satisfied their burden of production.[5]

### B.

The burden therefore shifts back to plaintiffs, who must show that the articulated nondiscriminatory reason for their termination was either (1) pretextual or (2) true, but only one of the reasons for DRMC and HMA's conduct, and another "motivating factor" was race. *Rachid*, 376 F.3d at 312. Plaintiffs allege both pretext and mixed motives.

### 1.

Pretext can be established by showing disparate treatment or that the "[legitimate] explanation is false or 'unworthy of credence.'" *Vaughn*, 665 F.3d at 637. Disparate treatment is established by proving that the employer treated similarly situated employees differently for "nearly identical conduct." *Id.*

---

[5] *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993) ("[T]he burden-of-production determination necessarily precedes the credibility-assessment stage. The employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be.") (internal quotation omitted).

No. 12-10730

Plaintiffs allege that Evans yelled at Indian respiratory therapists when he was dissatisfied by their performance yet never treated caucasian employees rudely.  Plaintiffs make no showing, however, that the newly-hired caucasian therapists engaged in the same or similar conduct as did plaintiffs.  *See Little*, 924 F.2d at 96–97.[6]  Most of plaintiffs' arguments focus on the alleged falsity of DRMC and HMA's nondiscriminatory explanations, which are "unworthy of credence if . . . not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  "Evidence demonstrating the falsity of the defendant's explanation, taken together with the *prima facie* case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).  But, "[m]erely casting doubt on the employer's articulated reason does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent." *Bienkowski v. Am. Airlines*, 851 F.2d 1503, 1508 n.6 (5th Cir. 1988).

Plaintiffs contend that DRMC and HMA's proffer of departmental restructuring as the nondiscriminatory reason is false, because (1) 2009 performance appraisals were not conducted for terminated employees; (2) the department restructuring was never implemented; (3) DRMC and HMA gave inconsistent reasons for plaintiffs' termination; and (4) DRMC and HMA committed multiple violations of their own policies and procedures in (a) investigating A. Assariathu's discrimination complaint and (b) losing Evans's interview notes.  Though

---

[6] Hiring patterns can constitute evidence of disparate treatment. *Palsasota v. Haggar Clothing Co.*, 342 F.3d 569, 575-77 (5th Cir. 2003).  In *Haggar*, 95% of the terminated employees were males over age 40, and 95% of the employees hired in their place where females under 40.  *Id*. at 577.  Here, 75% of the terminated therapists were of Indian origin, whereas 70% of the newly hired therapists were caucasian.  Unlike the employer in *Haggar*, however, DRMC *does* explain why it chose to terminate mostly Asian therapists as part of a plan to "reconfigure" its respiratory department.  *See id*.  Plaintiffs' allegation that their lower scores on a test with facially neutral questions constitute a cloak for invidious discrimination thus goes to falsity, not disparate treatment.

embedded within a racial discrimination claim, most of plaintiffs' arguments constitute nothing more than a criticism of DRMC and HMA's subjective business decision to terminate them.

"[W]e do not view the discrimination laws as vehicles for judicial second-guessing of business decisions." *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997). That DRMC and HMA's choices were arguably wrong or poorly executed does not change our analysis "so long as those decisions are not the result of discrimination." *Jackson v. Watkins*, 619 F.3d 463, 468 n.5 (5th Cir. 2010) (per curiam). Moreover, DRMC and HMA's alleged "disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual." *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996) (internal quotation omitted).

With respect to plaintiffs' argument that DRMC personnel's allegedly inconsistent reasons for their termination raise a fact issue under *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408 (5th Cir.2007), the plaintiffs "ask[] too much of *Burrell*," because DRMC's "rationale has essentially remained the same." *Nunley v. City of Waco*, 440 F. App'x 275, 277-78 (5th Cir. 2011) (per curiam). To make out a discrimination claim, plaintiffs "must establish some nexus between the employment actions taken" and their race. *Tex. Instruments*, 100 F.3d at 1182 (internal quotation omitted). Because plaintiffs' falsity arguments rest only on a "bald assertion" that such a nexus exists, they cannot survive summary judgment. *Id.*

## 2.

Under the mixed-motive theory, a plaintiff can defeat summary judgment by offering "sufficient evidence to create a genuine issue of material fact . . . that the defendant's reason, while true, is only one of the reasons for its conduct, and

another 'motivating factor' is the plaintiff's protected characteristic." *Rachid*, 376 F.3d at 312. Plaintiffs point to statements made by Evans as evidence that discriminatory animus was a motivating factor in DRMC's decision to terminate.

According to four of the plaintiffs, Evans expressed a desire to put a "new face" on the department; no plaintiff, however, has presented evidence—beyond a subjective belief[7]—that Evans meant a "non-Indian" or "white" face. Indeed, when asked, Evans clarified his statement as referring to his desire to hire "more respiratory, that's all." Joseph has claimed that, on two occasions, Evans vowed to "get rid of these people," meaning Joseph and another technician in one incident and plaintiffs Shiny Abraham and D. Pillai in the other. On one of those occasions, Evans allegedly referred to the objects of his ire as "lazy, lousy people."

But there is no evidence–again, beyond some plaintiffs' subjective belief—that Evans meant "Indian people" rather than "employees with whom he was dissatisfied." Plaintiffs further allege that Evans was generally rude to Indian employees. As noted above in our discussion of disparate treatment, there is no summary judgment evidence that Evans differently treated Asian and caucasian employees *who engaged in similar conduct. See Vaughn*, 665 F.3d at 637.

One of the caucasian respiratory therapists, Rick Daniel, did make unambiguously discriminatory comments against Indians on numerous occasions to multiple plaintiffs. The record shows that although Daniel was intimately involved in the planned departmental restructuring, he had no role in the antecedent termination decisions. When asked whether he "recall[ed] discussing with Chris Evans regarding the terminations of the employees in the department during the restructuring," Daniel stated that "the only thing I really

---

[7] *See Kennerson v. Guidry*, 135 F. App'x 639, 641 (5th Cir. 2005) ("[An] . . . employment discrimination . . . plaintiff's subjective belief an insufficient defense to a summary judgment motion . . . ."); *see also Elliot v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir. 1983).

remember is when [Evans] first mentioned [the departmental restructuring] to me and we started talking about the list [of employees scheduled to be terminated], there was one person on the list [Abraham] I tried to talk him out of, but I wasn't successful." Thus, based on Daniel's testimony, we agree with the district court that plaintiffs have provided no evidence that he had any influence on the decision to terminate plaintiffs.[8]

## IV.

In addition to discrimination, Title VII prohibits retaliation—an employer may not "discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiffs contend that DRMC and HMA retaliated against them by terminating their employment after A. Assariathu had complained about Evans's allegedly discriminatory practices and other plaintiffs participated in Sewick's subsequent investigation. "[T]he familiar *McDonnell Douglas* burden-shifting framework applies in Title VII retaliation cases."[9] "A plaintiff establishes a *prima facie* case of retaliation by showing (i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir.), *cert. denied*, 133 S. Ct. 136 (2012). We agree with the district

---

[8] *See Sandstad*, 309 F.3d at 899–900 ("[S]tatements constitute evidence of discrimination if they indicate [prohibited] animus and the speaker *is principally responsible for the plaintiff's firing*.") (emphasis added); *see also Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) ("[C]omments are evidence of discrimination only if they are . . . made by an individual with authority over the employment decision at issue . . . .") (internal quotation omitted).

[9] *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001), *abrogated on other grounds by Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011).

court that the retaliation claims of Abraham, D. Pillai, Joseph, and Susan Mathew fail at step one, because they concede that they did not engage in a protected activity. Because those plaintiffs do not challenge that portion of the district court's ruling, we consider their retaliation claims abandoned.[10]

We next consider the plaintiffs who participated in the complaint and subsequent investigation: A. Assariathu, Reena Assariathu, R. Pillai, and Thomas. Assuming *arguendo* that those plaintiffs have made out a *prima facie* case, DRMC and HMA have offered a legitimate, non-retaliatory reason for their termination, as discussed in part III.A above. The burden then shifts back to plaintiffs.

> To defeat a motion for summary judgment, a plaintiff must demonstrate "a conflict in substantial evidence on [the] ultimate issue" of "but for" causation. Evidence is "substantial" if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.

*Hernandez*, 670 F.3d at 658.[11] Because plaintiffs offer no proof that the alleged retaliatory motive was a necessary cause of their termination, their retaliation

---

[10] *See Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 701 n.1 (5th Cir. 2004) ("As a general matter, arguments raised in the district court but omitted from the appellate brief are waived.").

[11] As the district court explained, this application of "but for" causation to the ultimate issue at "step three" of the *McDonnell Douglas* framework was unaffected by *Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010), in which we held that a plaintiff may satisfy the "causal link" prong of a *prima facie* case by showing that a protected activity was a "motivating" or "substantial" factor. *Nunley*, 440 F. App'x at 280-81. *See Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) ("At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's *prima facie* case—whether a *causal* link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly. The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a "but for" cause of the adverse employment decision . . . . The standard for establishing the "causal link" element of the plaintiff's *prima facie* case is much less stringent.") (internal citations omitted).

No. 12-10730

claims fail.  *See Nunley*, 440 F. App'x at 280.

The summary judgment is AFFIRMED.[12]

---

[12] Because all of plaintiffs' discrimination and retaliation claims against DRMC and HMA fail as a matter of law, we join the district court in declining to address the additional grounds for affirmance urged by HMA. *Accord Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) ("[I]t is an elementary proposition, and the supporting cases too numerous to cite, that this court may affirm the district court's judgment on any grounds supported by the record.") (internal citation omitted).