# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-20176

United States Court of Appeals
Fifth Circuit

**FILED**
May 22, 2019

Lyle W. Cayce
Clerk

JOSE INOCENCIO,

> Plaintiff - Appellant

v.

CHIEF MARTHA MONTALVO; CITY OF HOUSTON,

> Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-2115

Before STEWART, Chief Judge, and SOUTHWICK and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Jose Inocencio, a former Lieutenant with the Houston Police Department, appeals the district court's grant of summary judgment in favor of Defendant-Appellee City of Houston. For the reasons set forth below, we AFFIRM the judgment of the district court.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20176

## I. BACKGROUND

Inocencio, a Hispanic man, was employed by the Houston Police Department (HPD) from 1982 until his retirement in 2014. Inocencio was promoted to the rank of Sergeant in 1992. In 2004, Inocencio was promoted to Lieutenant and assigned to the Narcotics Division, where he remained for the duration of his career until he retired.[1] Inocencio's claims arise out of the HPD's denial of his requests to transfer to a Lieutenant position in the High Intensity Drug Trafficking Area (HIDTA) program on three separate occasions, denials he claims were based on his race and/or national origin.

Inocencio alleges that the Narcotics Division had a long-standing policy of promoting into HIDTA positions only officers who had first worked in the street-level units within that division. Inocencio also maintains that he was highly qualified for the HIDTA positions, claiming that he led the "most productive" squad in General Narcotics and achieved high productivity by cultivating and managing about 60 confidential informants.

Inocencio's first allegation of discrimination pertains to the selection of the Narcotics Lieutenant with the HIDTA Narcotics Operational Control Center (NOCC) in 2009. He suggests that Captain Gerstner[2] first deviated from the "promote from within" policy by awarding the HIDTA NOCC Lieutenant position to Lt. C.J. Day, a white male who had never worked in the Narcotics Division.[3] In accordance with the HPD policy at the time, the HIDTA position was not posted and no interviews were conducted. It is undisputed that Inocencio did not apply for the NOCC position, but he claims he would have applied if he had known about the position because he "held a strong

---

[1] The rank system of HPD was as follows, from lowest rank to highest: Officer; Sergeant (promoted); Lieutenant (promoted); Captain (promoted); Assistant Chief (appointed); Executive Assistant Chief (appointed); Chief of Police.

[2] Captain Gerstner became head of the Narcotics Division in 2008.

[3] Lt. C.J. Day was previously a Lieutenant in the North Patrol, TACT.

2

desire for the HIDTA position." Although Inocencio began questioning whether he was not promoted because he was Hispanic, the summary judgment evidence is uncontroverted that Inocencio made no complaint of discrimination in the selection of the NOCC position until several years later when he filed his EEOC charge dated August 15, 2013.

Inocencio alleges that he next suffered discrimination in 2011 when Captain Gerstner failed to promote Inocencio for a second time, instead selecting Lt. Leslie Martinez, a white non-Hispanic female, for the open HIDTA Targeted Narcotics Enforcement Team (TNET) Lieutenant position. Captain Gerstner made his recommendation after formally interviewing five candidates, including Inocencio. Captain Gerstner initially recommended Lt. Irving, a white male, based on his investigative, tactical, and communication skills. Captain Gerstner also expressed his concern regarding Inocencio's eligibility for the position based on his alleged membership in a motorcycle club, Los Carnales.

After Lt. Irving declined the position, Gerstner recommended Lt. Martinez, a white female from the Homicide Division, concluding that she would be a valuable addition to the Narcotics Division based on her investigative and tactical skills, excellent writing skills, and strong work ethic. Inocencio did not make a claim of discrimination regarding the TNET selection until his 2013 EEOC charge. Inocencio claims he subsequently began more actively expressing his concerns about racial discrimination in the Narcotics Division and requested an open-door meeting with Martha Montalvo, then the Executive Assistant Chief, on March 30, 2013.

Inocencio contends that the City discriminatorily failed to promote him for a third time when he was not selected for the HIDTA position in 2013, despite the fact that he had notified both Captain Gerstner (on April 1, 2013)

No. 18-20176

and Captain Brown[4] (on May 22, 2013) of his interest in the vacant HIDTA Truck, Air, Rail and Port Task Force (TARP) Lieutenant position. In compliance with Assistant Chief Curran's "3-2s" assignment,[5] Inocencio drafted a memorandum on May 30, 2013 addressed to Captain Brown and Assistant Chief Curran complaining about the prior failure to promote him to the HIDTA program and alleging that the Hispanic Lieutenants in the Narcotics Division were being treated unfairly because they were not selected for the HIDTA positions.

The next day, on May 31, 2013, Captain Brown sent out a department-wide email announcing the position and implemented a panel interviewing procedure. Captain Brown conducted preliminary interviews of at least ten applicants, including Inocencio and Lt. Williams, selecting the top four most qualified candidates to proceed to the panel interviews. Captain Brown formed an advisory board to interview the top four applicants for the TARP position.

Captain Brown asserts that the panel was intended to provide more input on the numerous candidates and to create a fairer, more objective hiring process. The interview panel was composed of five members (three members were white, and two members were Hispanic), including HPD personnel and representatives of HIDTA. According to Assistant Chief Curran, comprising the board of people from partner agencies outside the department reduced bias. The panel scored the candidates based on a series of predetermined job-related questions and made a recommendation to Captain Brown. Although Captain Brown and Assistant Chief Curran selected the panel members and drafted

---

[4] Captain Gerstner transferred out of the Narcotics Division in 2013 and was replaced by Captain Brown.

[5] Assistant Chief Curran directed the divisions to participate in a "3-2s" assignment, eliciting input from Lieutenants regarding two things that need to be changed immediately, two things that that should be maintained, and two things that should be changed in the future.

No. 18-20176

interview questions based on the job description, Chief McKinney determined the panel selection process, selected the interview questions, and developed the scoring matrix.

The panel recommended Lt. Williams, the highest scoring candidate. Although Captain Brown told Inocencio it was a "horse race" between Inocencio and Lt. Williams, Lt. Williams was ultimately promoted to the HIDTA position over Inocencio. Lt. Williams, a black male, had never worked as a Lieutenant in the Narcotics Division. Inocencio now criticizes the selection process, alleging that Captain Brown did not have any specific training to develop testing methodology for the newly established board and claims that the interview questions purposely undervalued hands-on narcotics experience.

In August 2013, Inocencio filed a complaint with the Equal Employment Opportunity Commission (EEOC). Inocencio claims that in its response to his EEOC charge, the City misrepresented that Inocencio's transfer to the Internal Affairs Division (IAD) was negated because of his "disciplinary history." Inocencio argues that this statement is not supported by the evidence and that it was controverted by Lt. Zera, who had approved the IAD transfer. Inocencio points to Dr. Zamora's testimony that labelling an officer with vague references to disciplinary problems is a phrase utilized to show that the officer has violated the code of silence in retaliation for speaking out about discrimination within the department.

On November 8, 2014, Inocencio retired from the HPD after 32 years of service. Inocencio states that his retirement was premature and was a result of his inability to cope with discrimination, retaliation, and the lack of advancement opportunities. Inocencio alleges that Captain Brown and Assistant Chief Curran did not continue to employ the panel procedure consistently in subsequent promotions.

5

No. 18-20176

Inocencio received a Notice of Right to Sue from the EEOC on April 20, 2016. In July 2016, Inocencio filed this suit against the City of Houston, and Martha Montalvo, in her official capacity as Police Chief of the City of Houston. Inocencio alleges that he was discriminated against based on his race and/or national origin, in violation of Title VII of the Civil Rights Act of 1964. He also claims the failure to promote was the result of Defendants' retaliation against him based on his complaints of discrimination. Further, he alleges that the discrimination and retaliation led to his constructive discharge in 2014.

On November 24, 2017, the City of Houston filed a motion for summary judgment. Inocencio filed a response in opposition to the City's motion. The district court granted summary judgment on March 13, 2018, dismissing Inocencio's claims with prejudice. This appeal ensued.[6]

*Arguments on Appeal*

Inocencio now appeals the district court's grant of summary judgment in favor of Defendant-Appellee City of Houston. Although Inocencio did not timely file EEOC discrimination charges for the first two challenged HIDTA positions, he argues—and the City disputes—that the first two positions are evidence of discrimination in not selecting him for the third HIDTA position (TARP). On appeal, Inocencio argues that he raised sufficient evidence for a reasonable jury to conclude that the Lt. Williams' board was pretextual, and the decision not to promote Inocencio was made because he was Hispanic, because he was opposed to discriminatory employment practices, or both.

After Inocencio was not promoted for the first two HIDTA positions in contravention of what he refers to as the "promote from within" policy, he

---

[6] Upon consideration of the parties' stipulation of dismissal of Defendant Martha Montalvo, the district court granted the motion and dismissed with prejudice all claims against Martha Montalvo, in her official capacity as Police Chief of the City of Houston. Inocencio does not challenge this dismissal on appeal.

complained to his superiors in the "3-2s" memorandum, and also had several open-door meetings with executive command. Inocencio claims this protected activity led to the formation of Captain Brown's interview committee, which Inocencio claims was created to disadvantage him by deemphasizing his experience as a veteran Lieutenant in the Narcotics Division.

Inocencio contends that he presented sufficient evidence to show that the creation of the board was pretext not to promote him, disagreeing with the district court's finding that the City was using a more "formal, transparent, and inclusive" process. Inocencio claims that Captain Smith's warning to "watch his back" and the inconsistent use of the board in awarding promotions following his departure from the department suggest that the creation of the board was motivated by discrimination and retaliation.

Appellees, Chief Martha Montalvo and the City of Houston (collectively, the City), highlight that Inocencio's claims regarding the first two HIDTA positions—which they refer to as "lateral positions" rather than promotions— were properly dismissed by the district court as time-barred. Nevertheless, the City contends that the first two challenged HIDTA selections were consistent with General Order 300-02, which provided that transfers of Lieutenants would be made at the discretion of the Chief of Police and that a division commander having a vacancy could request a resume from any lieutenant.

Appellees argue that Inocencio's discrimination charge regarding the third HIDTA position (TARP) was properly dismissed because he did not, and cannot, show pretext to rebut the City's nondiscriminatory, legitimate business reasons for its selections. Appellees also reject Inocencio's contention that there is evidentiary value in his non-selection for the first position; they assert that because he did not apply for the position, he cannot claim that the decision to fill that position with someone else was discriminatory. According to Appellees, the City had legitimate business reasons for its selection for all three positions

that are unrelated to race or national origin. Appellees argue that an employee's unsupported subjective belief of discrimination is insufficient to overcome the summary judgment burden.

Finally, Appellees contend that Inocencio's retaliation claim was properly dismissed because he did not raise a genuine issue of material fact that "but for" his protected activity, he would have received the TARP position instead of Lt. Williams—the highest scoring candidate. Appellees also dispute that the meetings constituted a protected activity. Appellees suggest that Inocencio did not present evidence of a hostile work environment, which is necessary for his constructive discharge claim.

In his reply brief, Inocencio rejects the City's references to the HIDTA positions as "lateral positions." Instead, he maintains that—as the district court found—he provided sufficient evidence that his non-selection for the TARP position was tantamount to a denial of promotion because HIDTA positions have greater benefits, require greater skill, and are more prestigious. Inocencio also responds that he presented sufficient circumstantial evidence of pretext in both his discrimination and retaliation claims based on the circumstances surrounding the three denials of promotions.

Contrary to the City's argument that Inocencio did not apply for the first position, Inocencio asserts that he did not have an opportunity to apply because the job was not posted and the Narcotics Division Lieutenants were not polled, in contravention of the promote from within policy. Furthermore, Inocencio argues that the City's proffered legitimate business reason for the second promotion is suspicious because Inocencio's membership in a restricted motorcycle gang was unsupported by evidence. Inocencio explains his initial failure to timely file an EEOC charge was a result of his reasonable fear of

retaliation, citing to his personal knowledge from being a witness in the *Zamora* case.[7]

Inocencio summarizes other circumstantial evidence of pretext presented in his initial appellate brief as follows: (1) abandonment of the "promote from within policy" when the next two lieutenants[8] in line were Hispanic; (2) shortly after he expressed interest in the third HIDTA position, Inocencio claims he was told he was being involuntarily transferred to IAD—a transfer that was never executed as a result of Inocencio's protests;[9] (3) the City's misrepresentation that Inocencio had a disciplinary history in its EEOC response and Dr. Zamora's testimonial explanation regarding the code of silence; (4) the close-timing between the meetings and Inocencio's non-selection for the position; (5) the timing of the formation of Captain Brown's committee, the composition of its members, and its de-emphasis on narcotics experience; and (6) the inconsistent use of the panel after Inocencio left the department.

## II. STANDARD OF REVIEW

We review a district court's "grant of a motion for summary judgment de novo, applying the same standard as the district court." *Howell v. Town of Ball*, 827 F.3d 515, 521 (5th Cir. 2016) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

---

[7] *See generally Zamora v. City of Houston*, 798 F.3d 326 (5th Cir. 2015).

[8] Notably, Captain Smith testified that Lt. Gonzales, the second referenced Hispanic Lieutenant in the Narcotics Division, had no desire to work HIDTA and had not applied for the position.

[9] Captain Zera testified that Inocencio's potential transfer to IAD was to occur on March 25, 2013, prior to Gray Smith's announcement that he was retiring from the TARP position. Additionally, the potential transfer was prior to Inocencio's April 1, 2013 email to Captain Gerstner requesting to be transferred into the TARP position and prior to his meeting with Martha Montalvo.

movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(a)). A moving party is entitled to summary judgment if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

All facts and evidence are viewed in the light most favorable to the nonmoving party. *Howell*, 827 F.3d at 522 (citation omitted). However, a party cannot defeat summary judgment with "conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela,* 684 F.3d 564, 571 (5th Cir. 2012) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)). Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine issue of material fact exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex Corp.*, 477 U.S. at 323).

### III. DISCUSSION

We have carefully reviewed the briefs, the applicable law, and the relevant parts of the record. We conclude that summary judgment was appropriate for essentially the reasons set forth in the district court's thorough, well-reasoned opinion. As an initial matter, we conclude—and Inocencio appears to concede—that Inocencio's discrimination claims associated with the first two HIDTA positions are time-barred because he did not file a charge of discrimination with the EEOC until August 15, 2013. *See* 42 U.S.C. § 2000e-5(e)(1) (A timely charge of discrimination must be filed before an individual may file or obtain relief on a Title VII lawsuit.); *see also Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) (A Texas claimant must file a Title VII

10

employment discrimination charge with the EEOC within 300 days of the challenged discrimination.)

Even if we consider the circumstances surrounding the first and second transfer denials,[10] we would still find summary judgment was properly granted to the City of Houston based on our analysis under the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[11] Assuming without deciding that Inocencio established a prima facie case of discriminatory failure to promote, he has not presented sufficient evidence to create a genuine issue of material fact that the City's articulated legitimate, non-discriminatory reasons for its selection decision were pretextual. *See Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999); *Solorzano v. Shell Chem. Co.*, 254 F.3d 1082 (5th Cir. 2001) (unpublished).

"An employer's subjective reason for not selecting a candidate, such as a [clearly articulated] subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007). The top four candidates, including Inocencio, were interviewed and scored by an unbiased panel based upon neutral performance-related factors. Distinguishable from *Alvarado*, the panel's procedure is extensively

---

[10] *See Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 n.12 (5th Cir. 1995) (noting that time-barred actions can be used as evidence of discriminatory intent in later actions).

[11] In Title VII cases relying on circumstantial evidence of discrimination, courts apply the three-step, burden-shifting approach set forth in *McDonnell Douglas Corp.*, 411 U.S. 792. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). Under this approach, a plaintiff must first establish a prima facie case of discrimination. *Id.* If the plaintiff makes out a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action taken. *Id.* The plaintiff must then "prove by a preponderance of the evidence that the employer intentionally discriminated against [him] because of [his] protected status" by putting forth evidence rebutting the nondiscriminatory reasons articulated by the defendant. *Id.* at 637. A plaintiff must offer sufficient evidence to create a genuine issue of material fact by establishing that the offered reason is a pretext for discrimination or that the plaintiff's protected characteristic was a motivating factor for the employer's conduct. *Id.* at 636.

documented in the summary judgment record, which includes records of the job description, panel questions, the master score sheet, interviewee score sheets, and comments/observations from the panelists. *See Assariathu v. Lone Star Health Mgmt. Assocs., L.P.*, 516 F. App'x 315, 319 (5th Cir. 2013).

At the conclusion of the interviews, Lt. Williams scored the highest with 503 points, receiving the largest number of points from four of the five panelists. Inocencio received 430 points, which was the second highest score. A number of panel members made comments that suggested that Inocencio lacked relevant knowledge about the HIDTA position. After ensuring the scores were accurate, Captain Brown accepted the panel's findings and recommended Lt. Williams for the TARP position.

Because the City sustained its burden of proffering a legitimate, nondiscriminatory reason for its actions, the burden shifts back to Inocencio to offer sufficient evidence to create a genuine issue of material fact that the stated reason is pretext for racial discrimination. *Jackson v. Watkins,* 619 F.3d 463, 466 (5th Cir. 2010).[12] Inocencio has failed to sufficiently demonstrate pretext. We concur in the district court's analysis finding Inocencio's unsubstantiated allegations of pretext insufficient to raise a genuine issue of material fact as to whether the City's nondiscriminatory reasons for its hiring decisions were pretextual.

Furthermore, we are unpersuaded by Inocencio's heavy reliance on the City's abandonment of what he refers to as a "promote from within" policy as evidence of discrimination. It is undisputed that the Captain and Chief of Police were granted discretion in transferring and reassigning Lieutenants based on the needs of the division. Although Captain Smith, a former Captain

---

[12] In his opposition to Defendants' motion for summary judgment, Inocencio conceded that he was not asserting a mixed-motive theory. Accordingly, we consider any mixed-motive arguments waived. *See Jackson*, 619 F.3d at 466 n.1.

in the Narcotics Division, testifies that he would have chosen to promote someone already assigned to the division and that he considered hands-on narcotics experience to be the most advantageous qualification for a HIDTA position, he unequivocally states that no such transfer policy existed and that it was within the Captain's discretion to select any person for the Lieutenant position with any method he or she chooses. This is also consistent with the testimony of Captain Brown and Chief McLelland, as well as the Houston Police Department's General Order 300-02.

According to Inocencio, it was common practice to give the Lieutenants in the Narcotics Division *preference* when filling HIDTA positions. However, there is nothing in the record that suggests the most senior employee was *automatically* selected. The HIDTA transfers criticized by Inocencio all involved an application process and, in some cases, an interview. Further, contrary to Inocencio's assertion, Lt. Gonzales, the second Hispanic Narcotics Lieutenant identified by Inocencio as being passed over for the HIDTA positions, never applied for or expressed interest in transferring to HIDTA.

Even if a policy existed as Inocencio alleges, the change in procedure alone is insufficient to establish pretext without evidence that the change was based on discriminatory motives. *See EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996) ("This court has observed that an employer's disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual."). Here, it is undisputed that the interview process— implemented by an objective panel—applied to all candidates without regard to race, gender, or national origin. *See Scales*, 181 F.3d at 711. Moreover, the use of an interview panel was not a novel concept and was previously used by the HPD.

No. 18-20176

For this reason, we reject Inocencio's contention that the modified use of the panel procedure in subsequent job appointments evinces pretext. The main modification Inocencio cites pertains to the composition of the interview panel to include Captain Brown and members of the Narcotics Department.[13] Inocencio also identifies positions, including non-HIDTA positions, that he claims were filled without approval by an interview board. However, there are no allegations that there were multiple applicants that would have necessitated an interview panel and no competent evidence that the modifications were motivated by a discriminatory purpose. *See Churchill v. Tex. Dep't of Criminal Justice*, 539 F. App'x 315, 320–21 (5th Cir. 2013).

A crucial piece of evidence considered by the dissent in its pretext analysis is the "abandonment" of the panel interview process. The dissent inaccurately states that the panel interview procedure was abandoned in favor of the original practice of promoting from within the Narcotics Division shortly after Inocencio retired. In actuality, while subsequent applicants were not subject to an identical interview process, a panel procedure remained in place for various open positions after Inocencio's transfer request was denied. Additionally, promotions identified by Inocencio as evidence of pretext are distinguishable and/or serve to demonstrate that Inocencio was not treated in a discriminatory manner.

Two of the subsequent promotions identified by Inocencio are non-HIDTA positions. Lt. Waterwall succeeded Inocencio as Lieutenant in General Narcotics North, a non-HIDTA position.[14] Although Lt. Waterwall was not

---

[13] If the two HIDTA panel members' scores are excluded and we only consider the scores of the HPD officers, Lt. Williams would still have received the highest score.

[14] When Inocencio was promoted to Narcotics Lieutenant in 2004, he had no previous experience in the Narcotics Division.

interviewed by a panel for that position, Lt. Waterwall was selected for a position under Captain Brown through an interview panel several years prior.

Inocencio next references Lt. Stephen Casko's administrative promotion process as evidence that the panel was inconsistently used after Inocencio left the Narcotics Division. The relevancy is not readily apparent because this was, again, not a HIDTA position. Lt. Casko was selected for the administrative position by a board of HPD officers, which differed from the board that selected Lt. Williams. Lt. Casko's subsequent transfer to TNET HIDTA Lieutenant under Captain Brown is more relevant to our discussion. Like the position Inocencio had applied for, this open HIDTA position was posted in a department-wide email. Lt. Casko's selection procedure consisted of a three-member panel interview, comprised of Captain Brown and two other HPD Captains. Similar to Inocencio's interview, Lt. Casko was asked a series of questions and scored accordingly. Lt. Casko had minimal Narcotics experience: he was assigned to be an officer (non-supervisory position) in the Narcotics Division for four months in 1998 and had worked as the administrative lieutenant in the Narcotics Division for six months prior to transferring to HIDTA.

Lt. Rachel Garza—who was previously denied the same TARP HIDTA position now being challenged by Inocencio—interviewed a second time for the posted TARP HIDTA position, this time under Captain Follis. Lt. Garza, an administrative lieutenant in the Narcotics Division, was selected after receiving the highest score by a three-member interview panel. This time the panel was comprised of HPD personnel, however, the same type of interview questions and scoring system was utilized.

Finally, Lt. Marsha Todd, an administrative lieutenant, was selected by Captain Follis for a HIDTA Lieutenant position without a formal interview before a board. Importantly, however, Lt. Todd testified that she was the only

applicant that responded to the email so there was no need for an interview. Additionally, Todd was previously a Sergeant in the FAST unit of HIDTA.

The panel interview process was modified, but it was certainly not abandoned. "Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'" *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (quoting *Beinkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988)).

We agree with the dissent that an apparently objective interview process is discriminatory if the reason for adopting the objective procedure was to thwart Inocencio for discriminatory reasons. The disagreement is whether there exists any evidence—beyond sheer speculation—of discriminatory animus. We find no evidence to support an inference of pretext based on these facts.

Moreover, Inocencio failed to rebut the City's explanation that it hired Lt. Williams based on his qualifications and higher interview score. Inocencio's "work experience and longer tenure with the company do not establish that he is clearly better qualified." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002); *see also Nunley v. City of Waco*, 440 F. App'x 275, 279 (5th Cir. 2011) ("[G]reater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another."). Lt. Williams had experience in numerous HPD divisions, including narcotics, and had previous HIDTA experience. Thus, Inocencio's arguments regarding his alleged superior qualifications also fail to establish pretext.[15]

---

[15] Additionally, in his 3-2s memo, Inocencio expressed his concerns about the racial make-up of the HIDTA positions, citing the low number of Hispanics and Blacks in HIDTA positions. Notably, the Lieutenant selected over Inocencio by the panel was a black male who had previous HIDTA experience.

No. 18-20176

Inocencio's subjective belief that discriminatory intent motivated the City's actions is insufficient to establish a material question of fact regarding the City's motives. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995) (citing *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115 (5th Cir. 1993)); *E.E.O.C v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir.1984) (Speculation and conclusory statements are insufficient to create a fact issue as to pretext.); *see also Price*, 283 F.3d at 722–23; *Churchill*, 539 F. App'x at 320–21. No reasonable jury could find that the City of Houston's selection of the highest-scoring candidate, Lt. Williams, for the TARP position was pretextual for discrimination against Inocencio. Thus, the City was entitled to summary judgment on Inocencio's discrimination claim.

Moreover, we conclude that Inocencio's retaliation claim was properly dismissed on summary judgment. Despite viewing all evidence and facts in a light most favorable to Inocencio, there is no evidence in the record that "but for" the protected activity (meetings and the "3-2s" memorandum), the adverse employment action (denial of his application for the TARP position) would not have occurred.[16] *See Alkhawaldeh v. Dow Chemical Co.*, 851 F.3d 422, 427 (5th Cir. 2017) (citing *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). The interview panel recommended Lt. Williams over Inocencio based on its clear consensus that Lt. Williams was the most qualified candidate. Captain Brown's formation of an objective panel and his acceptance of the disinterested panel's recommendation does not permit a plausible inference of retaliation. Inocencio admits that no person on the interview panel harbored

---

[16] Inocencio complained that it was unfair that he had to compete for the position and requested an "immediate change" to the HIDTA hiring procedure. When an interview panel was implemented, he complained that it was discriminatory and in retaliation for his complaint. The dissent appears to suggest, as does Inocencio, that the only appropriate non-discriminatory response to Inocencio's 3-2s memo would have been for Captain Brown to transfer Inocencio to the HIDTA position without consideration of any other applicants.

animus towards him and points to no evidence that any person on the interview panel was aware of his prior complaints to Captain Brown, Assistant Chief Montalvo, or Chief McClelland. Thus, Inocencio has not raised a genuine issue of material fact that "but for" his complaints of discrimination, he would not have been denied the TARP position. *See Ray*, 63 F.3d at 436; *Nunley*, 440 F. App'x at 280.

Finally, Inocencio did not present evidence to support a finding that his employment conditions were so intolerable that a reasonable employee would have felt compelled to retire. Inocencio was not demoted, he had no reduction in salary, none of his job responsibilities were reduced, he was never reassigned to perform menial or degrading work, and he was not given an offer of early retirement. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). Inocencio's mere speculation of heightened scrutiny is insufficient. *See Hayley v. All. Compressor LLC*, 391 F.3d 644, 652 (5th Cir. 2004). Failure to make such a showing is fatal to Inocencio's constructive discharge claim. *See Tyler v. Union Oil Co. of Ca.*, 304 F.3d 379, 394–95 (5th Cir. 2002) (citing *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)).

## IV. CONCLUSION

For these reasons, summary judgment is AFFIRMED.

No. 18-20176

LESLIE H. SOUTHWICK, Circuit Judge, dissenting in part.

I concur with the majority's decision on the constructive discharge claim. Respectfully, I dissent to the resolution of Inocencio's discrimination and retaliation claims.

My objections derive from the link between the failure to promote Inocencio and the departure from prior departmental practices that seemingly would have promoted him. Inocencio's complaint about prior promotion decisions led to a new procedure being adopted. The dispute is about the new procedure's purpose and operation.

Inocencio claims that the procedure was a sham, one designed to deny him a promotion either because of his race or else to retaliate against him for complaining that his prior non-selections were motivated by racial animus. The City claims that, to the contrary, this new procedure reflected that the HPD took Inocencio's complaint seriously and ensured that the selection process was non-discriminatory. Facially, such purposes may justify the majority's decision. The rest of the story, though, creates genuine fact issues.

The majority primarily relies on the evidence that the new procedure was non-discriminatory. Other evidence we must consider shows this:

(1) a longstanding practice of internal promotion was discarded just as Inocencio would have benefitted;

(2) a new panel interview procedure was implemented after Inocencio complained the departure from the practice of internal promotion was discriminatory; and

(3) this new procedure was then abandoned in favor of the original practice of promoting from within the Narcotics Division shortly after Inocencio left the department.

The majority assumes without deciding that Inocencio established a prima facie case. I decide, based on no real dispute, that Inocencio clearly did establish a prima facie case for discrimination.

19

No. 18-20176

For both his claims, then, it comes down to whether Inocencio made the required showings of pretext. The showing would have to be from the totality of the evidence and whether it supported an inference of discrimination or of retaliation, with retaliation judged by a higher "but for" causation standard. *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348-49 (5th Cir. 2019) (citation omitted).

The district court found that the "practice during those years" prior to the failures to promote Inocencio "evidently was to give preference to lieutenants in the Narcotics Division." The majority's focus on the fact that captains ostensibly had discretion on transfers fails in my view to give weight to the reality that the discretion was consistently exercised to select for HIDTA positions from within the Narcotics Division. A "plaintiff may rebut an employer's proffered justifications by showing how a policy operates in practice." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1355 (2015).

I agree with the majority "that an employer's 'disregard of its own hiring system does not of *itself conclusively* establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual.'" *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996) (citation omitted). That does not change the fact that it can be evidence of both. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007).

The sheer novelty[1] of the panel interview process, combined with its abandonment shortly after its invention, together represent circumstantial

---

[1] The majority indicates that the HPD had used panels prior to the one Inocencio encountered. There is no dispute, though, that panels had never been used in connection with lieutenant transfers until Inocenio's interview for the HIDTA position. I do not see record support for the assertion that Captain Brown had used a panel to interview Lt. Waterwall "several years prior." The panel interview appears to have been to replace Lt. Follis as administrative lieutenant, which only occurred after Lt. Williams was selected over Inocencio for the HIDTA position formerly held by Lt. Smith. The few examples in the record of an outside panel previously being used for non-lieutenant positions seem readily

20

evidence to support an inference that the proffered reason for the change, namely, to measure objectively the most qualified candidate, was pretextual. "At summary judgment, evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference . . . even without further evidence of [the] defendant's true motive." *Nall*, 917 F.3d at 348 (citation omitted).

As to the needed evidence on retaliation, the majority concludes that "there is no evidence in the record" Inocencio's complaints were a "but for" cause of his non-selection. The record does support that the selection itself was an objective process leading to finding a different candidate to be the most qualified. Though perhaps it is a novel twist on such facts, I cannot accept that the objective process is enough if the reason for adopting an objective procedure was to thwart Inocencio for discriminatory reasons.

Indeed, there is evidence that "but for" the protected activity, the interview panel would never have been created. That distinguishes this case from others where we have rejected a change to a selection procedure as relevant evidence. In one, the changes that did not support an inference of discrimination were "modifications of agency policy as set forth in the FAA's internal procedures necessitated by" a recent "FAA-wide reorganization implemented to comply" with a recently passed federal law. *Scales v. Slater*, 181 F.3d 703, 710-11 (5th Cir. 1999). The changes ultimately affected the employee, but they had nothing to do with her. The new procedure here may have had everything to do with Inocencio — it was even referred to within the department as the "Inocencio Rule." But for the departure from the long-

---

distinguishable because of the special skills needed: an interview for positions like an "explosive detection dog handler" and an occasion a panel included "people from the City Controller's office for auditing purposes."

standing practice of promoting lieutenants from within the Narcotics Division, there is evidence Inocencio would have been selected for the HIDTA.

This is also not the only evidence offered by Inocencio that raises questions about the new procedure and the City's proffered purpose for it. The adoption of the procedure caused Captain Smith to warn Inocencio to "watch his back." Sergeant Montalvo and Captain Zera both testified that they saw no reason for involving individuals from outside HDP in the process. After Inocencio retired, the Narcotics Division reverted to "promoting from within" when it selected non-Hispanic Lieutenants Casko, Garza, and Todd for the next three HIDTA openings. Casko and Garza were selected through a panel interview process that varied in some respects from the one used for Inocencio, but Todd obtained the HIDTA position without any interview at all after responding to an email sent only to the lieutenants in the Narcotics Division, as had been the practice until the occasions complained of by Inocencio.

The majority's conclusion that "there was no need for an interview" because Todd was the only narcotics lieutenant who expressed interest overlooks that this was also true of Inocencio when he applied for the HIDTA openings. The difference is that when Inocencio was the only interested narcotics lieutenant, Captain Brown also invited interest from outside the Narcotics Division by sending an email to the entire Houston Police Department. Inocencio's entire point is that if the invitation to apply for the third HIDTA opening had been limited to the Narcotics Division — like it had been in the past and like it would later be for Todd — he would have been selected for an HIDTA position. The contrast between the crowded field that confronted him and the utter lack of competition faced by Todd is precisely the problem.

It may be that the panel interview process was not imposed for discriminatory reasons, but "the difficult task of resolving this 'conflict in

substantial evidence' falls to the jury." *EEOC. v. Rite Way Serv., Inc.*, 819 F.3d 235, 244-45 (5th Cir. 2016) (citation omitted).  I would reverse the district court's grant of summary judgment on the discrimination and retaliation claims.

Respectfully, I dissent.